Good morning. May it please the Court, Sidney Dortch of Gibbs-Houston POW for the petitioner Jorge Recio-Gonzalez. I'd like to reserve a minute or two for rebuttal. Whatever you've got left on the clock is yours. Thank you. Mr. Recio seeks review of decisions on two separate applications. First, a decision of the Legalization Appeals Unit denying Mr. Recio's legalization application as a seasonal agricultural worker for SAW. Second, BIA decision denying Mr. Recio's application for cancellation of removal. With respect to Mr. Recio's SAW application, a way of overview, Mr. Recio established his eligibility to legalize as a seasonal agricultural worker by a just and reasonable inference, which is the standard in these types of cases. The INS erred when it denied his application in the first place and compounded its error by sending its denial to a non-record address, an address that we would contend is nonexistent. The 1986 Farmworker Amnesty Program provided a mandatory form of relief for farmworkers who had performed 90 man days of farmwork during a statutory period in the mid-1980s. Because of the nature of the industry and inadequate recordkeeping, the law provided that applicants could prove the extent of their employment as a matter of a just and reasonable inference. Counsel, they sent the notice, apparently to a vacant lot, something like that, anyway, and it came back and they knew that. That's awfully important. The thing is, is there anything that tells us in the record, I didn't see it, when they sent the first notice to the same lousy address, apparently he got the notice. Apparently he did, Judge, and it's unclear why. It seems to simply have been fortuitous. He did get that notice of intent to deny, and he did timely respond to that. Maybe he just got a good postman who fixed it, but we just don't know. But it did get to him. We don't know. I think what's important is that the 1601 address appears nowhere in the record as having been provided by Mr. Recio. What is in the record? The record, the 1601 address, which was not Mr. Recio's address, appears on documents from INS, so the notice of intent to deny, the notice of denial. The record, as far as the address provided by Mr. Recio, contains an address that is somewhat similar, 6001. And Mr. Recio provided this address in a number of different places in the context of his notice of intent to deny. On a couple of the letters he had provided in response to that notice of intent to deny, as well as the return address on the envelope that was with him. He didn't file anything formal. It was just at the bottom of, say, one of his letters. But the fact is, it came back. When they sent the second notice, it came back to them saying, no such address or something like that. Is that correct? That's right, Your Honor. No such number is what the return envelope said. And we would maintain that this was not a new address. But he didn't provide an official notice. If he did, we don't know what it was. Well, we maintain that this was not, in fact, a new address. His cancellation of removal application indicates that this had been his address since March of 1989, which would have been a few weeks before he had his initial interview with the legalization officer. So we maintain that this was not a new address in terms of when he was responding to the notice of intent to deny. Did he provide an official notice of the address in his earlier proceedings? There's not an official notice, per se, in the administrative records. My problem is, if there is no official notice in the file, how can you say the government sent it at the wrong place or that there's a due process violation? It's one thing if he provides an official number. It's another thing to have a bunch of stuff that's on unconnected pieces of correspondence, some of which arise when you send it to 6001. I mean, so at least one of those things got there. I understand, Judge. Nowhere in the record does he identify that as his address, not initially. It's not as if he's identified that as his address, and then a few years later, all of a sudden he's saying, well, hey, this is my address now. He didn't identify the other one as his address, either. I'm sorry, what? He didn't. When you say this, I don't know what this means. You're talking about 6001 or 1601? That's what I mean. So nowhere in the record does he know. But he certainly doesn't identify 1601, either, as his official address. Well, he does in the notice of intent to deny. He does indicate that that is his address. He says this is my official address? He writes it beneath his name. He did not attach a form. That's correct. He did not attach a form. But we maintain this isn't a new address. This was his address. Well, I understand. But new from what? It's one thing if you have an official form that says, look, this is my address. You sign it, you date it, you swear it under oath, and then you never change. But you don't have a document like that in the file. You don't have anywhere in the file anything where he provides official notice. We don't have a document in the file in which he's providing his address as either 6001 or 1601. Or 1600 Pennsylvania Avenue, either. That's correct. Presumably. He doesn't. So I don't know how you can blame the INS for not sending it to an official address that he never officially provided. Well, Judge, I don't think that INS, that it's acceptable for INS to send notice of intent to deny, notice of denial to an address at which he never lived and he never provided to the INS. But doesn't he have a duty to keep the INS informed about what his current address is? He does. And he did that in his notice of intent to deny. And he probably did it even sooner, perhaps at his legalization interview, which would have happened just a few weeks after he began residing at the address in question. Do you think it was in that interview that this wrong address came up, that the INS representative did a Scribner's error? It's possible. The numbers, again, are very similar. So it's possible that it was a clerical error on the part of the INS and that the numbers got transposed. He doesn't, when he says, when he gets the letter that's addressed at 6001 Park, he doesn't then say, by the way, you got the wrong address, here's my correct address. He didn't say that, but he did write his address correctly in his response to the notice of intent to deny. I'm aware of that, but he doesn't say, no, this is a different address than you've been using. You're right. He doesn't say that. Okay. He doesn't include the envelope to say, here, compare the address or anything. I mean, there's no way he calls attention to the fact that the INS. So he is aware that INS may have a wrong address for him, and he doesn't call it to their attention. Perhaps, Judge, but INS, within a matter of days, receives the envelope back, no such number, the envelope that contained the notice of denial. They receive it back, no such number. Rather than looking in the file to ascertain, do we have the correct address on this envelope, INS does nothing. If they looked in their file, they wouldn't have found anything. Is that true? Well, they would have, on the notice of intent to deny, they would have seen the 6001. Notice of intent to deny. You mean on his response to it? I'm sorry. Response to the notice of intent to deny. Yes, that's correct. Okay. If they look at it, they've seen at the bottom of his response. But they wouldn't have found anything else in their file. Is that right? Not in the administrative record that we have, no, Judge. But it appears in two places in the notice of intent, the response to the notice of intent to deny, as well as the notice of intent to deny. Did you ever save a minute and a half for a bottle? Yes, I will. Thanks. Thank you. The government. Good morning, Your Honors. Your Honor, Ashley B. Schwartz, correspondent, Alberto Gonzalez. We don't know where the address 1601 or 6001 came from. Your Honor's suggestion makes a lot of sense, that it was a scrivener's error, and perhaps it came from the interview. But the point is, the burden, it did get to Petitioner. INS had no reason to believe that it was an incorrect address. Except when they get the next thing back. But what were they supposed to do at that point? They had almost 2 million legalization applications. They saw applications. The population was a migrating population by its nature. They had to go to their address of record. It was incumbent on Petitioner to say, let them know this is not my address. Well, you say it's incumbent. But what we're talking about is they're supposed to be giving him a notice for due process purposes. And they know, not only does it come back, it doesn't come back and say nobody's here. It comes back and says there ain't no such address. So they know they've sent it to a place that doesn't exist. How in the world does that comport with their obligation to give notice to him of their rejection and his right to appeal? Because the first letter was delivered there. And successfully We don't know that it was delivered there at all. We know it's a vacant lot or something. There's not even such an address. So we know it was not delivered to that address. Well, Your Honor, again, we don't know what it was in 1989 or 1991 when this letter was sent. You think maybe the house was torn down? It's possible. The point is because we only checked in 2005. Somebody went and said it's a vacant lot now. So you're telling me when the INS gets something back that says you sent it to something that's not even an address, they don't say, well, maybe the postman fouled up, like sometimes we say to ourselves, and sent it again. And they don't say, well, gee, maybe we should see if we've got anything else in our file that shows the right address. They just say, whoop, too bad. We sent it there, and that's the end of that. Is that right? That's enough notice to somebody who's going to lose his status in this country because of it? That's enough notice when the first letter sent to that address was delivered and responded to. At that point, this is one document. Petitioner has the one document which was delivered with that address. He needs to say this is not the address. Well, he did. He put his right address at the bottom. But he didn't say send it to this address. What if he were just mailing it from someone else's house, using that address, or he was planning to move using another address? Then INS would have been at fault for sending it to that address. Unless he says this is my correct address, the address you used is not a valid address, the INS was under no obligation to send it anywhere else other to where it is. Do you have the record in front of you? I beg your pardon? Do you have the file record in front of you? I have what you have. We don't have the application. It's not in the file. I'm sorry? Do you have the record? Yes. Okay. Look, I have two records. One of them is my SAAR record and one of them is my cancellation record. I just want to make sure we're both looking at the same piece. I apologize. And was there a particular one? I'm not going to apologize. I want to make sure you've got the same thing. Was there a particular one? I'm looking at the one that is a SAAR record, 0473481. Yours may look a little different. Flip to page 15. Yes. So that's the place where he writes in his address? Actually, I think there was a let --" no, this is the response. This was the late response. He wrote it somewhere else before that. He wrote it in response to the March --" Well, he writes it on his application for temporary SAAR. He writes it in his address, doesn't he? He wrote with --"He responded within 30 days to the March 25, 1991 notice, which was sent to the wrong address." Or what he claims now is the wrong address. Let's see. This is the one on the 19th. Is that the one that he wrote in also by hand? Okay. The notice of intent to deny, which is on page 37, was sent on March 25, 1991 to 1601, and it was received there. So unless we --" Well, we don't know that it was received there. Because he responded to it. That doesn't mean it was received there. Well, it --" It means he got it or he got wind of it, but it doesn't mean it was received at that address. It does not mean that. Correct? Okay. A letter addressed to that address was time --" was received by Petitioner within the time to respond, which was 30 days. We know that. We know that. Right. Now, why was it sent there anyway? Don't know. As --" Because the address he gave on his SAAR application was totally different. Exactly. So as Judge Carney suggested, perhaps it was a transcription error during the interview. Well, why --" If it wasn't some formal change, you're saying he has to file a formal change, why wasn't it being sent to 2410 South Mission? Because --" He's required to file a formal change of address, and he didn't, according to the record. Then why wasn't it sent to Mission? Well, a verbal telling an interviewer during an interview, this is my new address, would have been sufficient, a face-to-face interview. He didn't have to do a form. He would have been there at the interview and would have provided that information. But we don't know that, right? We don't know that. All we know --" I'm sorry? Why don't we know where they got that address, by the way? Well, if it was --" They don't transcribe the oral interviews, or not transcribe. I understand that. But why don't we know where they got the address? There must --" I mean, if it was just at an oral interview, how did the notice come out of an oral interview? It must have gone --" Somebody must have looked at the piece of paper and said, this is his address, wasn't it? Well, you're right. It's not in that record. Why don't we have that? Because the legalization records were prepared by a separate agency, and we had no control over that because of the or no contact with them. It was completely separate because of the confidentiality provisions. Well, since that's the piece of paper we could assume that you would have, should not we assume that if we had the piece of paper it would be adverse to your position? No, Your Honor. Because it could have been a legalization, a form that was just entered into the computer. That's the usual evidentiary rule, isn't it? I'm sorry? That's the usual evidentiary rule, isn't it? If there's something that you can be --" So you send a notice to some address or other, and you could be expected to have the back of information, and you come in and say, there's no information anywhere. We don't have anything.  Isn't that certain information? Well, I believe there was a computer entry at some point, and that's probably how it was done, but that was in 1992. But we don't know that either, right? Oh, no, no. We do know that, but that was in 1992, and it was after he had submitted a change of address or had written enough letters. But, again, the point here, and it's just that there was no reason for INS to know it was a bad address because they got a response within 30 days, and they were not told specifically, please send mail to this address. And do Your Honors want to address the cancellation issue? No questions on that? It wasn't addressed by ---- I beg your pardon, Your Honor? It's up to you, but opposing counsel didn't address it. Okay. Well, basically, cancellation, it's the ---- it was a discretionary denial. He provided for exceptional and extremely unusual hardship. Yes, the immigration judge should have advised him on the record since he was pro se, but when he filled out the application, it specifically said, you have to state that a qualifying relative will suffer exceptional and extremely unusual hardship. On the record, at the hearing, the immigration judge said to explain that standard. In his decision, the immigration judge specifically said, I am ---- you meet all the other requirements. I'm denying in the exercise of discretion because you failed to establish exceptional and extremely unusual hardship. It took three pages to do that. So he could have corrected it to the board, and he didn't. He said he was denied the right to present papers, but he did present them to the board, and they didn't go to the hardship issue. Therefore, he had the opportunity, didn't move to reopen, didn't submit them to the board to convince the board that there was clear error, and therefore, he ---- it was a discretionary denial and no due process violation. I would like to say, if I haven't convinced, despite my best efforts, that it was proper notice based on how the legalization unit worked and the fact that they were dealing with two million applications in a very short period of time, there is a jurisdictional issue. Should Your Honors choose to remand the legalization, and it would have to be a remand because the board ---- the legalization appeals unit denied it as untimely, not on the merits. So it would have to be remanded to adjudicate the merits. Your Honors, I would recommend that if you do decide to send it back to the legalization unit, you hold on to the case, you retain jurisdiction, because the only way he can seek review if it's denied again, the only way he can seek review is with, under the statute, is with a challenge to a removal order. And he ---- it will be a jurisdictional nightmare if you do. But I think you should uphold the government on both issues. But did I explain the jurisdictional problem? Thank you. Thank you, Your Honors. Thank you. Assuming it was sent along the average, what's your prejudice? What's the prejudice? No. Judge, the prejudice is that Mr. Resio was ---- was denied the right ---- was denied lawful temporary residence. But he might have been denied it anyway. What would he have done different? I don't think he should have been denied anyway, Judge, because he met the burden of proof. He met the just and reasonable inference burden of proof. No, no. I don't know that you understand my question. Let's say he got the right notice. What would he have then done to ---- what would have happened differently than ---- He would have immediately appealed. This is somebody who I think the record demonstrates has been quite diligent in his efforts to stay on top of his immigration case upon learning of the denial from an INS officer. Let's say he had appealed. He would have appealed. He would have received likely the same ---- a similar decision from the LAU, namely decision denying based on adverse information. And he could have presented his case to this court. And would have said what? He would have said that he met his burden of proof. He presented evidence that by a just and reasonable inference established his eligibility for legalization. We'd look at that record and say, well, it seems to us that there is substantial evidence supporting the agency, and therefore, although we know it might have come out differently, affirmed. So what is your prejudice? Judge, with all due respect, the record shows that the agency relied on adverse extra record evidence in denying his application. That certainly is not a sound decision. Like what? The agency refers to a list provided by Mr. Rescio's employer of his employees. Since Mr. Rescio was not on the list, INS contends that Mr. Rescio ---- This is Vega, right? Pardon? This is Vega. That's right. That Mr. Rescio was not one of his employees. In response to that, Mr. Rescio provided letters from Vega saying, no, you need to add him to the list. Sometimes he worked under an alternate name. That list is not part of the record. I'm sorry. He had letters from Vega saying ---- I thought it was letters to Vega where he said, hey, I should be on the list. No. Vega signed new letters, Judge, that were submitted in response to the notice of intent to deny, in which Vega clarifies who should be on the list and clarifies that at times Mr. Rescio worked under the name Cesar Gonzalez. In addition, INS relied on ---- And these are on the record? Those are in the record. I'm sorry. The list is not in the record. But the letters from Vega clarifying who should be on the list are in the record. In addition, INS relied on what it describes as signature exemplars to say that the signature exemplars provided by Vega to the INS do not match the Vega signatures on the documents provided by Mr. Rescio. The signature exemplars are not part of the record. In relying on extra record adverse evidence, the INS violated due process and regulation. In conclusion, we ask this Court to find that Mr. Rescio's appeal was timely. Further, we ask the Court to find that Mr. Rescio carried his burden of proof and that the INS has failed to provide specific evidence to rebut the just and reasonable inference. We also think this is one of the rare cases where a Ventura remand is not required. SAW, of course, is a mandatory form of relief, as this Court held in a recent en banc decision, Perez Enriquez. A SAW case need not be remanded if the agency had a first crack at deciding the case. And in this instance, the agency did. The LAU in its denial refers to adverse information, as well as untimeliness. Okay. Thank you. Casio, SAW, you're abstentive.
judges: Kozinski, Fernandez, Carney